**CIPRIANI & WERNER, P.C.**
**Francis J. Leddy, III, Esq. (Attorney ID# 011952006)**
Woodbridge Corporate Plaza
485 (E) Route 1 South- Suite 120
Iselin, NJ 08830
T: (848) 229-3300
F: (848) 247-6174
fleddy@c-wlaw.com
Attorneys for Plaintiff, Czar Incorporated

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CZAR INCORPORATED,<br><br>                    Plaintiff,<br><br>          v.<br><br>STILES MACHINERY INC., J. SCOTT CRUICKSHANK, JAMES KLOB, RSA SOLUTIONS, BILL WATTERS, MILLWORK DETAILS & TECHNOLOGY, JULIE RICHTER, JOHN DOES 1-5 (fictitious defendants), and ABC CORP. 1-5 (fictitious defendants),<br><br>                    Defendants. | Civil Action No.: 2:21-cv-03483<br><br><br><br>**COMPLAINT** |

Plaintiff, Czar Incorporated, complaining of the Defendants states as follows:

### JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this action as the action involves a federal question arising under the Racketeer Influence and Corrupt Organizations Act (R.I.C.O.) 18 U.S.C. §1962(c) and §1962(d).

2.      Venue is properly placed in the District of New Jersey pursuant to 28 U.S.C.§1391(b)(2), as the District in which the transaction which is the subject matter of these proceedings occurred and from which the funds issued to Defendants were drawn.

## THE PARTIES

3.      Plaintiff, Czar Incorporated ("Plaintiff"), is a corporation formed under the laws of the State of New Jersey with its offices and principal place of business located at 51 Montgomery Street, Belleville, NJ 07109.

4.      Upon information and belief based upon business dealings, communications and online disclosures, Defendant Stiles Machinery Inc. ("Stiles") is s a corporation formed under the laws of the State of Michigan with its offices and principal place of business located at 3965 44th Street SE, Grand Rapids, MI 49512.

5.      Upon information and belief based upon business dealings, communications and online disclosures, Defendant RSA Solutions ("RSA") is s a corporation formed under the laws of the State of Missouri with its offices and principal place of business located at PO Box 504, Lamar, MO 64759.

6.      Upon information and belief based upon online disclosures, Defendant Cruickshank is a resident of North Carolina and is a Director of Software Solutions at Stiles.

7.      Upon information and belief based upon online disclosures, Defendant Klob is a resident of Arizona and is a Director of Software Integration Specialist at Stiles.

8.      Upon information and belief based upon online disclosures, Defendant Watters is a resident of New Jersey and is a Regional Sales Manager at RSA.

9.      Upon information and belief based upon online disclosures, Defendant Millwork Details & Technology ("MD&T") is s a company formed under the laws of the State of Missouri with its offices and principal place of business located at PO Box 0015, Drexel, MO 64742.

10.     Upon information and belief based upon online disclosures, Defendant Richter is a resident of Missouri and is a CAD/CAM Software Integration, Training and Product Design Specialist at MD&T.

**FACTUAL BACKGROUND**

11.     Plaintiff is a corporation that designs, manufactures and installs doors, millwork, cabinetry, furniture, fixtures and displays for residential and commercial projects throughout the country.

12.     Plaintiff was solicited online, in Las Vegas, Nevada at a convention and subsequently over interstate wire communications by Defendant Watters and RSA to purchase and install RSA's software which included the following programs: WOODCAD/CAM Cut Rite Optimizing, additional licenses, CAD2CNC 3 Axis, Online Label, woodCAM Multi CNC, and 5 Axis/Flex 5 (collectively the "Software").

13.     Plaintiff was also solicited online and over interstate wire communications by Defendant Watters and RSA to purchase upgrades, onsite training, online training and assistance (collectively the "Training").

13.     On August 13, 2019, Plaintiff entered into a contract with RSA by which RSA agreed to provide RSA's Software and Training.

14.     Plaintiff paid RSA fifty thousand dollars ($50,000.00) per the terms of the contract.

15.     On October 1, 2019, Plaintiff was contacted via electronic mail by Sarah Huisman, a Customer Experience Coordinator at Stiles listing Stiles' "master plan" to install the Software and provide Training to Plaintiff so that Plaintiff could utilize the software by November 22, 2019.

16.     As part of Stiles' "master plan" for the week of October 1, 2019 Ms. Huisman represented to Plaintiff as follows:

This week you'll first work on downloading all the necessary files for your woodCAD|CAM using the "woodcad|cam download document".pdf in attachment. Remember, they need to be installed on each desktop (client) as well as on the server if you are looking to have a network style set-up.

When you are done downloading the files, you'll contact the amazing Jim Rudolph using the information listed on the .pdf so he can help finish the installation and make sure everything is set-up correctly.

Also this week, you'll email me the names, email addresses and best contact information of the people who are going to be going through training. These individuals should do the attached prerequisite homework assignment (woodCAD|CAM Student AutoCAD Aptitude Assessment & Company Construction Details.pdf) and send it to the email address in the instructions by the end of the day Tuesday 10/8 so it can be graded and attached to their files. That way the training can get underway smoothly (see attached syllabus).

17.    As part of Stiles' "master plan" for the week of October 14, 2019 Ms. Huisman

represented to Plaintiff as follows:

10/14 – 10/18 will be your week for woodCAD|CAM basic 101 training online. Class runs from 1:00 EST – 4:00 EST (I'll send instructions on how to get in, etc. the week before) It's an online class with other customers who may be in the same or a different industry. Class size is limited to 5 people altogether to ensure quality.

18.    As part of Stiles' "master plan" for the week of October 28, 2019 Ms. Huisman

represented to Plaintiff as follows:

10/28 – 11/1 will be the week for woodCAD|CAM intermediate 201 training. Online class will run Monday – Friday and be either in the morning (9:00 EST – 12:00 noon) or the afternoon (1:00 EST – 4:00 EST) and will be with your company only. We'll get into how to build your library, hardware and other advanced concepts.

19.    As part of Stiles' "master plan" for either the week of November 4 or November

11, 2019 Ms. Huisman represented to Plaintiff as follows:

Either the week of 11/4 or the week of 11/11 will be the week you'll connect with the amazing @Rob Donica from Stiles University to

> get your Cut Rite training. Cut Rite is a little more plug-and-play
> than woodCAD|CAM so there are only 3 three-hour sessions to
> schedule. Rob will be in touch to get this pegged down.

20.     As part of Stiles' "master plan" for either the week of November 18, 2019 Ms.

Huisman represented to Plaintiff as follows:

> Finally, we're projecting your onsite training and integration if
> everything goes great for the week of November 18-22. The goal is
> that by the end of the week, you and the team are ready to move to
> production with your new method and that any lingering questions
> can be answered with some of the additional online training you
> purchased, or through the Tech Support offered by your SSLA
> agreement.
>
> Throughout the process if you have any questions, please let me
> know and I will be thrilled to help.

21.     From October 11-14, 2019, Plaintiff worked diligently to get the Software loaded

into Plaintiff's system and operational.  However, in light of proprietary coding needed and

upgraded system requirements, which RSA and Stiles omitted telling Plaintiff about, this process

took almost one (1) full week.

22.     At no point during solicitation of Plaintiff by Defendant Watters and RSA did either

disclose the need for upgraded computer systems by Plaintiff or Autocad, which cost Plaintiff

approximately an additional five hundred dollars ($500.00).

23.     On October 14, 2019, Plaintiff's employees began Training with Defendant Richter

of MD&T.  Plaintiff's employees spent the better part of three (3) weeks in this Training; however,

the training included dozens of other "students" from preceding weeks of Training being re-

trained, and the majority of the time Plaintiff's employees were muted and could not participate.

24.     During this period, Defendant Richter and MD&T proved incapable to provide the

contracted for Training as they did not have sufficient understanding of the Software to teach it.

Unfortunately, this was unbeknownst to Plaintiff at this time as Plaintiff had no prior knowledge

of the Software.  Moreover, Plaintiff was unaware that Defendant Richter was not an employee of Stiles, but rather MD&T.

25.     On October 28, 2019, Plaintiff's employees began training with "Oren" of Stiles in what was called "201 Class."  But, Plaintiff's employees were not at all fluent with the Software in light of Defendant Richter's, MD&T's and Stiles' failure to provide adequate Training.  As a result, Plaintiff's employees were faced with information that was indecipherable.

26.     The week of December 9, 2019 was supposed to be Training in what was referred to as "301 Class," but the first couple of days of this Training was relegated to fixing the Software, which had not been fully or properly installed by Stiles originally.  Defendant Klob of Stiles spent those two (2) days integrating the Software on a new server, which Stiles first advised Plaintiff must be purchased that week.  At no time during solicitation by Defendant Watters and RSA was it disclosed a new server would have to be purchased by Plaintiff.  Nor, was it disclosed at any point during the weeks of Training prior to the week of December 9, 2019.

27.     As a result, Plaintiff was forced to expend several thousand dollars for the cost of the new server and IT related services that it had not previously been told it would have to spend.

28.     Due to Defendants' failure to inform Plaintiff at the outset of the need for this new server, the timing of the delivery as delated until later in the week of December 9, 2019.

29.     As a result, the Software was not fully integrated until Stiles returned after the holidays in January of 2020.

30.     Between January and March of 2020, Plaintiff's employees spent many days online trying to use the Software, which was not operating correctly.  Plaintiff could not print or send commands to its machines.

31.     Between January and March of 2020, the Online Label component of the Software would not function and Stiles first told Plaintiff that Plaintiff would have to buy yet another computer for Plaintiff's shop in order for the Online Label component to work correctly.

32.     Plaintiff's operations were shut during April and part of May of 2020 due to the Covid-19 Pandemic.

33.     Sometime in and around mid-May of 2020, Plaintiff again tried to utilize the Software on a small job and it was non-operational.  Plaintiff called Stiles only to be told, "These are training issues.  Go watch a video. We can't help you."  This despite the fact that Plaintiff had purchased Training per the contract.

34.     Upon attempting to access Training videos, Plaintiff first learned that Stiles had upgraded the Software to a newer version than that purchased by Plaintiff.  As a result, Plaintiff was prohibited from accessing Training videos rendering the Software completely obsolete.

35.     Plaintiff requested that Stiles upgrade Plaintiff's software to the newer version in order to access the Training videos online, but Stiles refused to do so or give access to the Training videos.

36.     Plaintiff's owner, Alex Gershkovich, ultimately spoke with Stiles requesting a full refund.  Instead, Stiles offered to send another representative, Defendant Cruickshank, out to train Plaintiff's employees for a week onsite as a courtesy.

37.     For two (2) weeks in June of 2020, Defendant Cruickshank was present at Plaintiff's workshop.  The majority of that time was spent consulting with programmers to get the Software to perform basic functions.  But, even though the limited training with Defendant Cruickshank the flaws in the Software became very transparent to Plaintiff's employees.

38.     Defendant Watters and RSA had represented to Plaintiff that the Software was production software.  Despite this, Plaintiff could not print from the Software.

39.     Stiles promised to fix this printing issue, but never did.

40.     Defendant Watters and RSA also represented to Plaintiff that the Software was an automated cabinet design system that would allow for production directly from drawing to Plaintiff's CNC and Panel Saw.  However, the Defendants' failures to properly install and integrate the Software to the Plaintiff's CNC rendered the CNC useless.

41.     As a result, Plaintiff has expended tens of thousands of dollars based upon Defendant's misrepresentations regarding the Software and Training, and is left with an obsolete version of new Software, that is not fully integrated into Plaintiff's machines, cannot be used for presentation, material breakdowns or anything necessary to Plaintiff's business operations.

42.     During their solicitation of Plaintiff, Defendant Watters and RSA also misrepresented that the Software would include a library of preloaded cabinets, hardware and materials, thereby misleading Plaintiff to believe that the Software would allow expedited production.  What Plaintiff actually purchased was Software that included not a single thing in its library.

43.     As of the date of filing of this Complaint, and by way of illustration, the following tasks as set forth in the contract were unfulfilled by Defendants:

- The tooling section of the Software was never completed.  Out of the 21 tools, only about four (4) tools were set up.
- WoodCAD/Cam (WCC) component software was to be installed on multiple CNC machines with the ability to filter and sort to different machines.  This was never done.  Two (2) CNC machines were never set up and Plaintiff's panel saw was not programmed by RSA or Stiles, but rather by Plaintiff with the help of Stiles' direct competitor, Biesse.
- Support of 4-axis operations such as miter cutting and A-angle milling was never provided.

- The so-called "amazing" experts dispatched to Plaintiff's workshop and office by Stiles could not make simple industry standard parts.
- Unlimited phone and email support, plus updates and upgrades were not provided. In fact, during the time period when the Software was still being installed on Plaintiff's server it was also updated. Despite being contractually obligated to provide Plaintiff such updates, Plaintiff was refused when the update was requested.
- 5-day Basic 101 with CC online training was not provided in any modicum of competency. The initial attempt to provide this training by Defendant Richter and MD&T in October 2019 was a total disaster. Ms. Richter had merely a basic understanding of the software and did more to confuse anyone than instruct them. As a result, Plaintiff's employees were required to retake the 1-week class for three (3) weeks. Ultimately, Stiles dismissed Ms. Richter and MD&T.
- Online CutRite training classes and advanced CutRite modules were never provided by Stiles.
- Online CutRite training classes additional add-on module was never provided by Stiles.
- Online with CC training (3 hour sessions) was never provided.

44.     The foregoing are not meant to be an exhaustive list of all of the breaches of the contract by Defendants. There are many.

45.     As of the date of filing of this Complaint, the following constitute material misrepresentations and/or omissions by Defendants which Plaintiff relief on to its detriment:

- Defendants repeatedly failed to advise Plaintiff of the required equipment and hardware needed in order to run the Software. Defendants never advised that a standalone server was needed in order to run the Software on Plaintiff's three (3) CNC machines. Defendants also failed to inform Plaintiff that it did not have sufficient video RAM or memory needed to use the Software it was purchasing. This resulted in Plaintiff having to spend approximately $2,500.00 to purchase two (2) new systems.
- Defendants also did not inform Plaintiff that a full version of AutoCAD was required in order to load the Software. This resulted in Plaintiff having to spend approximately $3,500.00 in an annual subscription to obtain AutoCAD.
- Defendants failed to do what was needed to be done to realize a full integration of the Software and Plaintiff's three (3) CNC machines despite representations by Defendants that a full integration would be accomplished.
- Defendants Cruickshank, Klob and Stiles assured Plaintiff that horizontal routing and hinges were part of the functionality of the

Software, which Plaintiff required in order to perform its door manufacturing. Unfortunately, there is no automatic way to do this in the Software nor has there ever been.

- Defendants Cruickshank, Klob, Stiles, Richter and MD&T promised the Software included self-propagating forms, data and charts, including 3-dimensional drawings, renderings, pre-installed borders and self-propagating title blocks with everything calculated and delineated. The Software was promised to be a fully automated system used from bidding to fabrication, delivery to installation. But, what was actually sold to Plaintiff was an empty shell of a system that required all components to be entered manually in order to create a 3-dimensional rendering. This was useless for Plaintiff to use for production purposes given the massive time delays precipitated.

- Dimensioning is 100% manual entry, which was not as advertised and contributed to the aforementioned time delays.

- Pre-installed title blocks were all set to the metric system which are incompatible for use on U.S. systems such as Plaintiff's and cannot be changed despite representations to the contrary. Specifically, Defendants Cruickshank, Klob, Stiles, Richter, and MD&T repeatedly told Plaintiff's employees that the compatibility issue was merely a product of the current version of Software, and would be corrected in the updated version, which Stiles refused to provide to Plaintiff despite warranties from Stiles and express contractual provisions requiring it be provided.

- Defendants promised to install and fully integrate the CutRite software, but never did so. CutRite was installed only temporarily on a computer belonging to one of Plaintiff's employees computer because it was to be installed on Plaintiff's panel saw computer manufactured by Biesse. Plaintiff was told several times by Defendants this would not be a problem despite Biesse and Stiles being direct competitors. Despite these representations, the Software cannot be integrated onto a Biesse product.

- In light of the incompetent 101 training provided by Defendant Richter and MD&T, and the software installation issues which created a myriad of delays, Stiles offered to send out Defendant Cruickshank as a courtesy to provide additional training to Plaintiff's employees in an effort to rectify Defendants' prior failures. Plaintiff never requested this training. Nor was Plaintiff asked or did Plaintiff agree to pay for same as it was explicitly offered in an attempt to resolve the issues outlined above. Only after completion of the Training, did Stiles then present Plaintiff with an additional invoice of $10,000.00 for the costs related to training; a classic bait and switch.

46.     The foregoing is also an exemplary list, not an exhaustive one. There were many misrepresentations and omissions by the Defendants regarding the Software and the Training.

47.     Plaintiff relief on these material misrepresentations and omissions, as well as others

to its detriment, which has resulted in the following damages:

- $57,200.00 paid by Plaintiff representing the costs of the Software and services purchased by Plaintiff pursuant to the contract, plus hidden costs;
- $10,000.00 paid by Plaintiff to Stiles for Training;
- Money damages resulting from weeks of lost production due to the time taken by Plaintiff's employees for repetitive training on the Software, which is now obsolete.

48.     Prior to filing this Complaint, Plaintiff contacted RSA to address all of these issues

and was advised that Stiles would be responsible for resolving all issues related to the contract.

49.     Through further research, Plaintiff came to learn that Defendant Richter was not an

employee of Stiles, but rather MD&T.

50.     RSA introduced Stiles into the discussions.  Stiles promised to fulfill all contractual

obligations owed by RSA per the terms of the contract with Plaintiff.

51.     Stiles introduced Defendants Richter and MD&T to the discussions.  Richter and

MD&T promised to fulfill certain obligations owed by RSA per the terms of the contract with

Plaintiff.

52.     By undertaking various contractual obligations owed by RSA, and being paid to do

so, the other Defendants are intended beneficiaries and direct or third parties to the contract.

53.     Despite the multitude of persons and companies involved in the transaction, fraud

and defalcation, Plaintiff never received the Software purchased in a proper installation, paid

monies for the Software despite the Software not being fully compatible as promised, paid

additional monies unwittingly in an attempt to integrate the incompatible Software into its

operation, and lost countless hours of production resulting from training on said software which

provided no efficacy due to the incompatible and useless nature of the software.

## COUNT ONE
### (Breach of Contract)

54.     Plaintiff hereby repeats each and every allegation contained within the previous paragraphs of the Complaint and incorporates them as if set forth fully herein.

55.     Plaintiff has fully performed under the terms of the contract but has not received the Software and Training, or a return of its funds.

56.     Defendants were all obligated to provide the Software in a fully integrated manner and provide Training to Plaintiff and Plaintiff's employees. Having failed to do so, they are jointly and severally in breach of the direct or third party contracts.

57.     As a result of the collective breach of the responsible defendants, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages including all economic losses, consequential damages, punitive damages, interest, attorney's fees and costs of suit, and any additional relief that the Court deems just and proper.

## COUNT TWO
### (Piercing The Corporate Veil Against Cruickshank, Klob, Watters and Richter)

58.     Plaintiff hereby repeats each and every allegation contained within the previous paragraphs of the Complaint and incorporates them as if set forth fully herein.

59.     The transaction was fraudulent in that these Defendants made multiple affirmative misrepresentations regarding the efficacy of the Software and Training subject to the contract as set forth above.

60.     With relation to the matters relevant to this suit, Stiles is controlled by Cruickshank and Klob, and Cruickshank and Klob as fraudulent parties may not assert the corporate shield to protect against such fraudulent activities.

61.     With relation to the matters relevant to this suit, RSA is controlled by Watters, and Watters as a fraudulent party may not assert the corporate shield to protect against such fraudulent activities.

62.     With relation to the matters relevant to this suit, MD&T is controlled by Richter, and Richter as a fraudulent party may not assert the corporate shield to protect against such fraudulent activities.

63.     Plaintiff has demanded return of its funds which Defendants have either ignored and/or refused to repay.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages including all economic losses, consequential damages, punitive damages, interest, attorney's fees and costs of suit, and any additional relief that the Court deems just and proper.

## COUNT THREE
### (Conversion)

64.     Plaintiff hereby repeats each and every allegation contained within the previous paragraphs of the Complaint and incorporates them as if set forth fully herein.

65.     Plaintiff paid $67,200.00 in exchange for fully installed and integrated Software compatible and usable with Plaintiff's business operations, and competent Training on said software.

66.     Plaintiff complied with the terms of the contract.

67.     Although the Defendants have failed to provide the Software and Training, none has returned Plaintiff its funds.

68.     Plaintiff is entitled to the immediate return and possession of its funds but Defendants have interfered therewith by refusing to turnover same.

69.     As a result Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages including all economic losses, consequential damages, punitive damages, interest, attorney's fees and costs of suit, and any additional relief that the Court deems just and proper.

## COUNT FOUR
### (Consumer Fraud)

70.   Plaintiff hereby repeats each and every allegation contained within the previous paragraphs of the Complaint and incorporates them as if set forth fully herein.

71.   Defendants are all "persons" as defined by New Jersey's Consumer Fraud Statute ("CFA").

72.   As part of the sale and installation of the Software, as well as during Training of Plaintiff's employees on the Software, Defendants Cruickshank, Klob, Watters, and Richter, individually and on behalf of Stiles, RSA and MD&T, made affirmative misrepresentations about the quality and capabilities of the Software as set forth above.

73.   Defendants did so in order to induce payment by Plaintiff.  This constitutes a false affirmative statement and an unconscionable commercial practice.

74.   The undisclosed principals Stiles, RSA and MD&T accepted the funds from Plaintiff but did not provide the Software and/or Training as promised and/or returned Plaintiff's funds. This constitutes an unconscionable commercial practice.

75.   Despite payment in full for the Software and Training, Defendants have failed to deliver the Software or Training as promised.

76.   Plaintiff has demanded a return of its funds and indicated it would happily return the Software, but Defendants have either failed to respond entirely or not agreed to return Plaintiff's funds.  Such conduct constitutes an unconscionable business practice under the CFA.

77.     As a result, Plaintiff has suffered an ascertainable loss by virtue of not having the promised Software and Training, nor having its funds provided to Defendants.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages including all economic losses, consequential damages, punitive damages, treble damages, interest, attorney's fees and costs of suit, and any additional relief that the Court deems just and proper.

## COUNT FIVE
### (Violation of New Jersey's Commercial Code)

78.     Plaintiff hereby repeats each and every allegation contained within the previous paragraphs of the Complaint and incorporates them as if set forth fully herein.

79.     Defendants held themselves out as having a knowledge and being in the business of selling, installing and providing Training on the Software. As such, Defendants are "merchants" as defined by *N.J.S.A.* §12A:2-104(1).

80.     The software which is subject of the contract is goods" as defined by *N.J.S.A.* §12A:2-105(1).

81.     Plaintiff is a "Buyer" as defined by *N.J.S.A.* §12A:2-103(1)(a).

82.     The contract between the parties is a "contract" or "contract for sale" as defined by *N.J.S.A.* §12A:2-106(1).

83.     *N.J.S.A.* §12A:2-713(1) provides for the contract damages as well as incidental and consequential damages in the event of "non-delivery or repudiation by the seller."

84.     Plaintiff has complied with all provisions of the contract and has made all payments for the Software.

85.     Despite Defendants' multiple misrepresentations, the Software was not delivered, installed and/or integrated as promised.

86.     As a result of Defendants' breach, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages including all economic losses, consequential damages, interest, attorney's fees and costs of suit, and any additional relief that the Court deems just and proper.

### COUNT SIX
### (Fraud and Conspiracy to Commit Fraud)

87.     Plaintiff hereby repeats each and every allegation contained within the previous paragraphs of the Complaint and incorporates them as if set forth fully herein.

88.     All of the Defendants conspired with one another to make statements on their behalf and for their benefit as set forth above.

89.     All of the Defendants conspiring with one another knew or should have known that these statements were false.

90.     Plaintiff reasonably relied upon the representations and statements of Defendants and paid $67,200.00 for the Software and Training.

91.     Defendants do not deny that Plaintiff made payment, yet none has repaid any funds to Plaintiff despite demand.

92.     As a result, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages including all economic losses, consequential damages, punitive damages, interest, attorney's fees and costs of suit, and any additional relief that the Court deems just and proper.

### COUNT SEVEN
### (Violation of 18 U.S.C. §1962(c) – R.I.C.O.)

93.     Plaintiff hereby repeats each and every allegation contained within the previous paragraphs of the Complaint and incorporates them as if set forth fully herein.

94.     Defendants violated RICO and Plaintiff was injured as a result.

95.     Each identified Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. §1961 (3).

96.     Each Defendant violated 18 U.S.C. §1962(c) by the acts described in the prior paragraphs, and as further described below.

97.     <u>The Enterprise</u>. Defendants formed an association-in-fact for the common and continuing purpose described herein and constitutes an enterprise within the meaning of 18 U.S.C.§1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

98.     Each enterprise has engaged in, and their activities have affected interstate commerce and utilized interstate wire communications.

99.     <u>Pattern of Racketeering Activity</u>. Defendants, each of whom are persons associated with, or employed by, the enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §I961(1), 1961 (5), and l962(c). The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violation alleged herein.

100.    Predicate acts of racketeering activity are more specifically alleged above in the prior counts of this Complaint and below.  Each Defendant engaged in at least two such acts or else aided and abetted two such acts.

101.    The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result (defrauding Plaintiff), participants (Defendants), victim (Plaintiff) and method of commission. Further, the acts of racketeering by Defendants were continuous. There was repeated conduct during a period of time beginning sometime prior to the August 13, 2019 contract and continuing to the present, and there is a continued threat of repetition of such conduct.

102.    The association-in-fact enterprise, as alleged herein, were not limited to the predicate acts and extended beyond the racketeering activity. Rather, they existed separate and apart from the pattern of racketeering activity for the legitimate business purpose of providing the Software and Training. Defendants have had and do have, upon information and belief, legitimate business plans outside of the pattern of racketeering activity.

103.    Plaintiff specifically alleges that Defendants participated in the operation and management of the association-in-fact enterprise by overseeing and coordinating the commission of multiple acts of racketeering as described above and below.

104.    Predicate Act: Misrepresentations to Defraud Plaintiff in Violation of 18 U.S.C. §§1341 and 1343. Defendants committed acts constituting indictable offenses under 18 U.S.C. §§1341 and 1343 in that they devised or intended to devise a scheme or artifice to defraud Plaintiff or to obtain money from Plaintiff by means of false or fraudulent pretenses, representations or promises. For the purpose of executing their scheme or artifice, Defendants caused delivery of various documents and things by private or commercial interstate carriers, internet, electronic mail, facsimile, or received such therefrom. Defendants also transmitted or caused to be transmitted by means of wire communications in interstate commerce various writings, signs and signals. The acts of Defendants set forth above were done with knowledge that the use of wires would follow

in the ordinary course of business, or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

105. Defendants carried out their scheme in different states and could not have done so unless they used private or commercial interstate carriers, internet, or interstate wires. In furtherance of their scheme alleged herein, Defendants communicated among themselves and with Plaintiff in furtherance of the scheme to defraud Plaintiff. These communications were typically transmitted by wire (i.e., electronically), internet, or private or commercial carriers. Specifically, Defendants used wire and internet to transmit fraudulent statements in furtherance of Defendants' enterprise.

106. For example, Plaintiff's employees overheard Defendant Watters of RSA on the telephone direct an as-yet-to-be identified representative of Stiles to, "just do what I need to shut these assholes up a little longer" in order to cover up the flaws in the Software and Training, as well as Defendants' myriad of misrepresentations, to which the Stiles representative agreed.

107. In addition, Defendants used wire, internet and/or private or commercial carriers to induce Plaintiff to execute the contract.

108. Upon information and belief, Defendants also communicated by wire, internet, or private or commercial carriers to facilitate the transfer of funds between themselves and to further communications to advance their enterprise.

109. Defendants' shared objective was and is to fraudulently divert Plaintiff's funds to their own benefit and to divide those funds amongst themselves.

110.   Plaintiff reasonably and justifiably relied upon Defendants' false representations, false pretenses and deceptive communications, and Plaintiff has been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

111.   <u>Continuity of Conduct</u>. Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured Plaintiff constituted a continuous course of conduct which was intended to obtain money through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 U.S.C. §1961(l) and (5).

112.   Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. §1962(c).

113.   The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in its business. Plaintiff seeks an award of damages in compensation for, among other things, the $67,200.00 Defendants stole from Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages including all economic losses, consequential damages, punitive damages, treble damages, interest, attorney's fees and costs of suit, and any additional relief that the Court deems just and proper.

## COUNT EIGHT
### (Conspiracy to Violate Federal Civil  R.I.C.O. of 18 U.S.C. §1962(d))

114.   Plaintiff hereby repeats each and every allegation contained within the previous paragraphs of the Complaint and incorporates them as if set forth fully herein.

115.    In violation of 18 U.S.C. §1962(d), the Defendants and each of them, knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering activity as alleged in the preceding count.

116.    The conspiracy is ongoing.

117.    The conspiracy's purpose was to divert money from Plaintiff to their own benefit in an effort to defraud Plaintiff.

118.    Each Defendant committed at least two overt acts in furtherance of such conspiracy. These acts in furtherance of the conspiracy include (but are not limited to) misrepresenting to Plaintiff as to the Software, its installation, its capabilities, its integration and Training on the Software.

119.    Even if some of the Defendants did not agree to harm Plaintiff specifically, the purpose of the acts they engaged in was to advance the overall object of the conspiracy, and the harm to Plaintiff was a reasonably foreseeable consequence of Defendants' actions.

120.    Plaintiff has been injured and continues to be injured in its business and property by Defendants' conspiracy in violation of 18 U.S.C. §1962(d). The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in its business or property.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages including all economic losses, consequential damages, punitive damages, treble damages, interest, attorney's fees and costs of suit, and any additional relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury to assess all issues.

## DEMAND FOR DISCOVERY OF INSURANCE INFORMATION

Pursuant to R. 4:10-2(b), demand is hereby made of Defendants for disclosure to the undersigned of any insurance agreements or policies under which any person or firm carrying on insurance business may be liable to satisfy all or part of a judgment which may be entered in this action or to indemnify or reimburse for payment made to satisfy the judgment.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-5, Plaintiff designates Francis J. Leddy, III, Esq. as trial counsel.

## CERTIFICATION

I hereby certify that this matter is not the subject matter of any other suit presently pending in any other court or in any arbitration proceeding. At this time, I know of no other parties that should be joined in this action.

CIPRIANI & WERNER, P.C.

**FRANCIS J. LEDDY, III, ESQ.**
Attorney for Plaintiff, Czar Incorporated

Dated: February 25, 2021